```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/7/2019_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYNTHIA SORIA and GIOVANNI SORIA, as Parents and Natural Guardians of G.S., and CYNTHIA SORIA and GIOVANNI SORIA, Individually,

                      Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                      Defendant.

19 Civ. 2149 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiffs, Cynthia and Giovanni Soria, are the parents of G.S., a seven-year-old boy who suffers from a brain injury. Compl. ¶¶ 6–7, ECF No. 1. Plaintiffs move for a preliminary injunction (1) vacating a New York state administrative officer's decision denying the parents' request for an interim order for tuition reimbursement from Defendant, the New York City Department of Education (the "DOE"), for their son's non-public school placement at the International Institute for the Brain ("iBrain"), and (2) ordering the DOE to fund G.S.'s placement at iBrain for the 2018–2019 school year until final adjudication of Plaintiffs' underlying administrative proceedings. Pl. Mot., ECF No. 13. For the reasons stated below, Plaintiffs' motion is GRANTED.

## BACKGROUND

I.    <u>Framework of the Individuals with Disabilities Education Act</u>

    Pursuant to the Individuals with Disabilities Education Act (the "IDEA"), a student with a disability is entitled to a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). An "individualized education program" or "IEP" for each child's FAPE is developed by her parents,

at least one teacher, and a representative of the local educational agency. *Id.* § 1414(d)(1)(A)(i); *id.* § 1414(d)(1)(B).

However, a parent who believes that her child is not being provided with a FAPE may place her child in a private school, *see Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369–70 (1985), and "seek tuition reimbursement from the school district by filing what is known as a due process complaint," triggering "an administrative procedure by which the board of education appoints an Independent Hearing Officer ('IHO') who conducts a formal hearing and fact-finding," *M.O. v. N.Y. City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) (internal quotation marks and citations omitted); 20 U.S.C. §§ 1412(a)(10)(C)(ii), 1415(b)(6); N.Y. Educ. Law § 4404(1). The IHO then renders a written decision on the parent's due process complaint by determining whether "(1) the proposed IEP failed to provide the student with an appropriate public education; (2) the parent's private placement was appropriate to the child's needs; and (3) equitable considerations support the parent's claim." *Reyes ex rel. R.P. v. N.Y. City Dep't of Educ.*, 760 F.3d 211, 215 (2d Cir. 2014). The IHO's decision is binding upon both parties unless appealed to a State Review Officer ("SRO"). 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(1), (2). An SRO's decision may be challenged by filing a civil action in a federal district court. 20 U.S.C. § 1415(i)(2)(A). That court, in turn, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C)(iii).

While the above-described administrative and judicial proceedings are ongoing, under the "pendency" or "stay-put" provisions of the IDEA and New York law, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." *Id.* § 1415(j); *see also* N.Y. Educ. Law § 4404(4)(a). This allows the parties to preserve "the educational status quo while the parties' dispute is being resolved." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014). An IHO then holds

a hearing and issues an interim order on pendency ("IOP") that determines (1) the student's "pendency placement" and (2) whether the DOE must provide tuition reimbursement so the student may "stay put" in her then-current educational placement while the parent's due process complaint is being adjudicated. 20 U.S.C. § 1415(j); *see also S.G. v. Success Acad. Charter Schs., Inc.*, No. 18 Civ. 2484, 2019 WL 1284280, at \*6 (S.D.N.Y. Mar. 20, 2019); *M.M. ex rel. J.M. v. N.Y. City Dep't of Educ.*, No. 09 Civ. 5236, 2010 WL 2985477, at \*11 (S.D.N.Y. July 27, 2010). "If the student's 'current educational placement' is in private school, the responsibility for private school tuition 'stays put' as well. Thus, if the district has been paying for private school tuition, the district must continue to do so until the moment when the child's pendency changes." *M.M. ex rel. J.M.*, 2010 WL 2985477, at \*2 (internal quotation marks and citation omitted). The parties may file an interlocutory appeal of an IHO's IOP decision to an SRO, N.Y. Comp. Codes R. & Regs. tit. 8, § 279.10(d), and then seek review of the SRO's decision before a federal district court, 20 U.S.C. § 1415(i)(2)(A). This is the procedural posture before the Court.

II.     Factual Background

Plaintiffs are the parents of G.S., a seven-year-old boy who suffers from a brain injury. Compl. ¶¶ 6–7. The DOE has classified G.S. as a child with a disability. *Id.* ¶ 8. During the 2017–2018 school year, G.S. was a student at the International Academy of Hope, or "iHope." *Id.* ¶ 9. Plaintiffs filed a due process complaint pursuant to 20 U.S.C. § 1415(f)(1)(A) seeking tuition reimbursement at iHope for the 2017–2018 school year. *See id.* ¶ 10. On June 6, 2018, New York City IHO Suzanne M. Carter awarded full tuition and costs at iHope to Plaintiffs (the "IHO Carter Decision"). *Id.*; Ashanti Decl. Ex. A, ECF No. 15-1. The DOE did not appeal this decision. Compl. ¶ 11.

On June 22, 2018, Plaintiffs provided the required ten-day notice to the DOE indicating that they were unilaterally moving G.S. from iHope to iBrain for the 2018–2019 school year, where G.S.

3

remains a student. *Id.* ¶¶ 8, 12–13. Plaintiffs filed a second due process complaint, this time seeking tuition reimbursement for the 2018–2019 school year at iBrain and additionally, as relevant here, seeking an IOP directing the DOE to fund G.S.'s tuition at iBrain until the due process complaint is resolved, arguing that such funding was appropriate because G.S.'s placement at iBrain was "substantially similar" to his placement at iHope, which had been fully funded pursuant to the IHO Carter Decision. *Id.* ¶ 14; Ashanti Decl. Ex. D, ECF No. 15-4. On August 27, 2018, New York City IHO Mindy G. Wolman denied Plaintiffs' IOP request (the "IHO Wolman Decision"), Compl. ¶ 17; IHO Wolman Decision, Ashanti Decl. Ex. F, ECF No. 15-6, holding that G.S. was not entitled to pendency funding under Section 1415(j) at iBrain because (1) Plaintiffs unilaterally moved him there, and (2) the evidence submitted by Plaintiffs was insufficient to establish that G.S.'s program at iBrain was "substantially similar" to his program at iHope. IHO Wolman Decision at 4–6.

Plaintiffs appealed the IHO Wolman Decision to the New York State Review Office. Compl. ¶ 18. On November 9, 2018, SRO Steven Krolak issued a decision (the "SRO Decision") (1) that assumed without deciding that G.S. could be entitled to an IOP order despite being moved unilaterally by his parents, (2) but that affirmed IHO Wolman's denial of the IOP, stating that SRO Krolak lacked sufficient information to determine whether G.S.'s programs at iHope and iBrain were "substantially similar." SRO Decision at 11–14, Ashanti Decl. Ex. H, ECF No. 15-8.

On March 8, 2019, Plaintiffs filed a complaint against the DOE in this Court, seeking an order (1) vacating the SRO Decision and (2) directing the DOE to fund G.S.'s tuition at iBrain for the 2018–2019 school year. Compl. at 5–6. On May 3, 2019, Plaintiffs moved for a preliminary injunction seeking such relief. *See* Pl. Mot.

## DISCUSSION

I. <u>Standard of Review</u>

A district court reviewing a state administrative decision under the IDEA "must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal quotation marks and citation omitted). "In deciding what weight is due to an IDEA administrative decision," the district court's analysis will often "'hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive' . . . includ[ing] the quality and thoroughness of the reasoning, the type of determination under review, and whether the decision is based on the administrative body's familiarity with the evidence and the witness." *Reyes ex rel. R.P. v. N.Y. City Dep't of Educ.*, 760 F.3d 211, 218 (2d Cir. 2014) (quoting *M.H.*, 685 F.3d at 244). Although the "federal court is required to give due weight to the rulings of a local or state administrative hearing officer, . . . [j]udicial deference is particularly appropriate when the state hearing officers' review has been thorough and careful." *M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000) (internal quotation marks, citation, and alterations omitted). The standard of review "requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete de novo review." *G.B. v. N.Y. City Dep't of Educ.*, 145 F. Supp. 3d 230, 245 (S.D.N.Y. 2015) (quoting *M.H.*, 685 F.3d at 244). "When seeking to overturn an SRO's decision, the [p]arents bear the burden of demonstrating that the decision was insufficiently reasoned or supported." *N.B. v. N.Y. City Dep't of Educ.*, 711 F. App'x 29, 32 (2d Cir. 2017) (summary order).

II. <u>Analysis</u>

Plaintiffs seek a preliminary injunction pursuant to 20 U.S.C. § 1415(j) that (1) overturns the SRO Decision and (2) orders the DOE to fund G.S.'s placement at iBrain for the 2018–2019 school year until the underlying administrative proceedings are resolved. *See* Pl. Mot.

A. Plaintiffs' Unilateral Decision to Transfer G.S. to iBrain

The parties agree that G.S.'s educational placement for the purposes of pendency is based on the unappealed IHO Carter Decision, which held that iHope was an appropriate placement for G.S. for the 2017–2018 school year.[1] Def. Mem. at 7–8, ECF No. 21; Compl. ¶ 15; SRO Decision at 9. Defendant asserts, however, that G.S.'s pendency established by that decision fails to establish pendency for iBrain because Plaintiffs moved him from iHope to iBrain. Def. Mem. at 7–8, 15.

Parents may unilaterally transfer their child from an established pendency placement to another educational setting so long as they comply with the ten-day notice requirement and establish that the two programs are substantially similar. *See Navarro Carrilo v. N.Y. City Dep't of Educ.*, No. 19 Civ. 2944, 2019 WL 2511233, at *2–4 (S.D.N.Y. June 13, 2019), *appeal filed*, No. 19-1813 (2d Cir. June 19, 2019) ("[P]arents may move their child from a previously approved private facility to another private facility and still receive 'stay put funding' as long as the new facility has the same 'general type of educational programming' as the approved facility." (citations omitted)); *Abrams v. Carranza*, No. 19 Civ. 4175, 2019 WL 2385561, at *4 (S.D.N.Y. June 6, 2019) (holding that parents are entitled to pendency tuition funding after unilaterally moving their child so long as parents demonstrate substantial similarity of programs); *cf. Honig v. Doe*, 484 U.S. 305, 323 (1988) (noting

---

[1] Pendency can be based on "an unappealed administrative decision." *Student X. v. N.Y. City Dep't of Educ.*, No. 07 Civ. 2316, 2008 WL 4890440, at *20 (E.D.N.Y. Oct. 30, 2008). The "pendency" or "stay-put" provision of 20 U.S.C. § 1415(j) "establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002). It "represents Congress' policy choice that all handicapped children, regardless of *whether their case is meritorious or not*, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 453 (2d Cir. 2015).

that, with the pendency provision, Congress sought to "strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . from school"). *But see De Paulino v. N.Y. City Dep't of Educ.*, No. 19 Civ. 222, 2019 WL 1448088, at *6 (S.D.N.Y. Mar. 20, 2019), *appeal filed*, No. 19-1662 (2d Cir. June 3, 2019). The Court rejects, therefore, Defendant's argument that by shifting G.S. from one non-public school to another Plaintiffs gave up their right to invoke Section 1415(j)'s stay-put protections.

      B.  Substantial Similarity of iHope and iBrain Programs

The Court now turns to the parties' second disagreement, namely, whether the iHope and iBrain programs are "substantially similar." When determining whether two programs are "substantially similar," "a slate of factors" is considered, including "whether the educational program in the student's IEP has been revised; whether the student will be educated with nondisabled peers to the same extent; and whether the student will have the same opportunities to participate in nonacademic and extracurricular services." *Navarro Carrilo*, 2019 WL 2511233, at *4; *see also T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014) ("[T]he pendency provision does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers," and instead "guarantees only the same general level and type of services that the disabled child was receiving."); *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009) ("'Educational placement' refers to the general educational program—such as the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school." (citation omitted)); *Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (PS 79) v. N.Y. City Bd. of Educ.*, 629 F.2d 751, 753–54 (2d Cir. 1980) (noting that "the term 'educational placement' refers only to the general educational program in which the handicapped child is placed," not a specific school).

Here, the SRO Decision incorrectly concluded that "there is insufficient information about some important details with respect to the program provided to the student at iHope during the 2017–18 school year to make a reasonable determination as to whether the transfer of the student to iBrain constituted a change in educational placement or is a substantially similar placement." SRO Decision at 13. This is because SRO Krolak failed to conduct a thorough inquiry and analysis. As SRO Krolak noted at the beginning of his opinion, he was "required to examine the entire hearing record . . . [and] seek additional evidence if necessary." SRO Decision at 2; *see also* 34 C.F.R. § 300.514(b)(2)(iii) ("The official conducting the review must . . . [s]eek additional evidence if necessary."). But, despite SRO Krolak's repeated complaint that he lacked evidence, he did not search for supplementation. For example, the iHope IEP that SRO Krolak deemed missing from the record was relied upon by the IHO Carter Decision awarding full tuition and costs at iHope for the 2017–2018 year. *Compare* SRO Decision at 12–13, *with* Ashanti Decl. ¶ 6 & Ex. A, ECF No. 15-1. Additionally, although SRO Krolak primarily focused on the absence of evidence with respect to G.S.'s program at iHope, he also noted that the record did not include information about certain services at iBrain, including "hearing education services." SRO Decision at 13. G.S., however, does not receive hearing education services at iBrain. Ashanti Decl. Ex. I, ECF Nos. 15-9, 15-10. These deficiencies in the SRO Decision illustrate an abject lack of thoroughness and sound analysis.

Moreover, on January 3, 2019, Plaintiffs submitted a motion to IHO Wolman seeking leave to introduce additional evidence in support of their application for pendency. Ashanti Decl. ¶ 18, ECF No. 15. The evidence consists of an affidavit of Nia Mensah, Doctor of Physical Therapy, who is the Clinical Director at iBrain and former Director of Physical Therapy at iHope. Mensah Decl. ¶¶ 1–2, Ashanti Decl. Ex. I, ECF No. 15-9 at 6–7. Curiously, IHO Wolman recused herself before ruling on the motion, as did a series of other IHOs before the action was eventually assigned to IHO Edgar De Leon, who has not yet ruled on it. Ashanti Decl. ¶¶ 19–41.

The Court shall consider Dr. Mensah's affidavit. *See* 20 U.S.C. § 1415(i)(2)(C)(ii) ("[T]he court . . . shall hear additional evidence at the request of a party."). Dr. Mensah identifies the many similarities between G.S.'s programs at iHope and iBrain. At iBrain—like at iHope—G.S. (1) is in a 6:1+1[2] special class; (2) has a full-time paraprofessional and school nursing services available to him as needed throughout the day; (3) receives the following one-on-one sixty-minute sessions: physical therapy five times a week, occupational therapy five times a week, and vision education services three times a week; (4) has a parent counseling and training mandate once per month for sixty minutes; and (5) has special transportation accommodations, which include a travel paraprofessional, limited travel time, air conditioning, and a wheelchair-accessible vehicle. Mensah Decl. ¶¶ 7–8. At iHope, G.S. received one-on-one speech-language therapy four times weekly and once weekly in a group setting, whereas at iBrain he receives it one-on-one five times weekly. *Id.* At iBrain, G.S. has one weekly sixty-minute assistive technology services session; such services were also available at iHope. *Id.* ¶¶ 6–7. Dr. Mensah notes that iBrain has many of the same students and staff as iHope, because "some of iHope's paraprofessionals, teachers and related services providers as well as most of its students, moved to iBrain upon iBrain's inception in 2018." *Id.* ¶ 9. Although a few services were not offered in September 2018, as iBrain was starting up, Dr. Mensah states that these deficiencies were short-lived and that any missed sessions will be made up, including the single missed parent counseling and training session that has already been made up. *Id.* ¶ 7(A)–(B); *see also Navarro Carrilo*, 2019 WL 2511233, at *17 ("I cannot find . . . that the failure to have a vision specialist on staff during the first two and a half months of the school year is an 'elimination' of vision support services, such that iBrain was not 'substantially similar' to iHope.").

---

[2] "6:1+1" refers to "a special education class with six students, one special education teacher, and one paraprofessional." *See S.Y. v. N.Y. City Dep't of Educ.*, 210 F. Supp. 3d 556, 564 (S.D.N.Y. 2016).

"Substantially similar," by its own terms, does not require sameness.³ The record demonstrates, therefore, by a preponderance of the evidence that G.S.'s program at iBrain for the 2018–2019 school year is substantially similar to his program at iHope for the 2017–2018 school year. Accordingly, G.S. is entitled to pendency at iBrain for the 2018–2019 school year.⁴

### C. Preliminary Injunction

Defendant's remaining argument is that an injunction under Section 1415(j) is not "automatic"—that is, Plaintiffs must still meet the traditional requirements to obtain a preliminary injunction. Def. Mem. at 8–10 (citing Pl. Mem. at 8, ECF No. 14). Specifically, Defendant argues that Plaintiffs are not entitled to an injunction because "there is no threat to the stability of G.S.'s learning experience" and "no evidence he will be expelled from iBrain" absent an injunction. *Id.* at 9. The Court disagrees.

Defendant contends that Section 1415(j) is motivated in part by a student's interest in maintaining a stable learning environment. *Id.* (citing *Cohen v. N.Y. City Dep't of Educ.*, No. 18 Civ. 11100, 2018 WL 6528241, at *2 (S.D.N.Y. Dec. 12, 2018) (noting that the Second Circuit's "automatic preliminary injunction" directive "has less purchase . . . in a case where there is no meaningful threat that a student will be removed from his pendency placement"); *Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988) ("The touchstone in interpreting section 1415 has to be whether the decision is likely to affect in some significant way the child's learning experience." (internal quotation marks and citation omitted))).

---

³ As the Second Circuit has observed, an interpretation of change in "educational placement" that would include any program changes would significantly hamper the ability of the DOE to implement even minor discretionary changes for its students. *Concerned Parents*, 629 F.2d at 755. Where, as here, parents transfer their child from one private school to another, there is no need to more strictly interpret changes in educational placement.

⁴ Because the Court deems the programs at iHope and iBrain substantially similar, it does not address Plaintiffs' alternative arguments concerning a theory of operative placement. Pl. Mem. at 20–23.

However, the Second Circuit has described Section 1415(j) as "an automatic preliminary injunction," and noted that it "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). Another court in this District recently considered and rejected Defendant's argument that there must be a threat to a child's learning experience for Section 1415(j) to apply. *Abrams*, 2019 WL 2385561, at *5. That court noted that, "[w]hile a few district courts have made the commonsense observation that plaintiffs might not be entitled to such an injunction if they have not shown any true danger exists, they have not relied on that observation to decline to grant a preliminary injunction or otherwise disturbed the well settled law that irreparable harm need not be shown to obtain injunctive relief regarding pendency." *Id.* (internal quotation marks and citations omitted); *see also Cruz v. N.Y. City Dep't of Educ.*, No. 18 Civ. 12140, 2019 WL 147500, at *9 (S.D.N.Y. Jan. 9, 2019) ("[T]his Court does not read *Cohen* as seeking to overturn well settled law that irreparable harm need not be shown to obtain injunctive relief regarding pendency."). The Court agrees with *Abrams* and holds that Plaintiffs need not demonstrate irreparable harm in order to prove their entitlement to injunctive relief with respect to pendency.[5]

In actions brought under Section 1415, a court has the discretion to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Here, the prerequisites for a preliminary injunction under Section 1415(j) have been met.

---

[5] Defendant cites to two opinions from this District which held that absent imminent threat of expulsion the parents' requests for preliminary injunctions to find pendency were to be denied. Def. Mem. at 9 (citing *Cohen*, 2018 WL 6528241, at *3; *Fiallos v. N.Y. City Dep't of Educ.*, No. 19 Civ. 334 (S.D.N.Y. Apr. 5, 2019), ECF No. 36). The Court declines to follow these decisions and instead joins those cases which held that (1) injury existed to establish jurisdiction and (2) the prerequisites to preliminary injunctions were met absent a showing of irreparable harm. *See Navarro Carrilo*, 2019 WL 2511233; *Abrams*, 2019 WL 2385561.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for a preliminary injunction (1) vacating SRO Decision 18-113 dated November 9, 2018 and (2) ordering the DOE to fund G.S.'s pendency placement at iBrain for the 2018–2019 school year until a final adjudication on the due process complaint is complete is GRANTED.

The Clerk of Court is directed to terminate the motion at ECF No. 13. Plaintiffs' counsel shall submit a motion for attorney's fees by **September 6, 2019**. If agreement on attorney's fees can be reached, the parties shall submit a consent judgment within the same.

SO ORDERED.

Dated: August 7, 2019
       New York, New York

_____
ANALISA TORRES
United States District Judge